I represent the Appellant Truth, which is a Christian student club and its two founders, Julianne Stewart and Charisse Undis, and they come before this court seeking relief. Particularly what they seek is equal opportunity to the same access to the same form offered every other student club at Kent Ridge High School. At bottom, this case, this appeal concerns the fundamental right of a private religious group to retain its religious essence, its religious identity, its viewpoint. For that is precisely what is at stake here for truth. That in order for truth to obtain the same form, the ASB status, the ASB recognition as any other student group in the Kent School District, and thereby the same equal access to things like the public address system, the yearbook, ASB funding, fundraising. In order to have that, truth has to forego who they are. May I ask a preliminary question? Yes, Your Honor. Which application is under review? Is it, are we, did the district court decide with respect to the third charter application? Yes, Your Honor, it's the third application. So the third application is under review? Yes, Your Honor. And the second question I have is, is your argument that you want to retain your essential nature, which is, I believe, related to the expressive association cases, is that under the Equal Access Act, or is your argument beyond the Equal Access Act and under the First Amendment? It's both, because it clearly implicates both, just like this court did in Prince v. Jacob. I understand that, and that's why I'm asking the question, because I'm interested in how your interpretation of the Equal Access Act covers this right to maintain your essential essence. Certainly. And if it doesn't, maybe it's under the First Amendment. Yes, Your Honor. The Equal Access Act, and as this court noted in Prince, is to be read broadly, be read broadly as far as what does speech mean in the Equal Access Act. And I think any fair interpretation of the Equal Access Act in regards to speech could be no less than what's offered in a free speech clause. Certainly, the Act was promulgated in connection with the Widmar v. Vincent case, where it referred to access of university groups, student groups on a public university, and trying to codify that same right, that same fundamental constitutional right for high school groups on high school campuses as it pertains to religious and political groups. Therefore, since the free speech clause clearly implicates expressive association, as noted certainly in the Boy Scouts v. Dale case, those same rights, I would submit, are also implicated by the Equal Access Act. Because in reading the Act, the Act would certainly have to apply to the same level as found in free speech. And in doing so, Your Honor, I think we have a clear violation here of the Equal Access Act, as well as the First Amendment. When you consider, certainly, I think, the order of this Court regarding the nondiscrimination policy and its application of the nondiscrimination policy, which is unequal, there can be no question when you consider the girls' honor club, the boys' honor club, which — It's called the men's honor club. I'm sorry, men's honor club. Excuse me. Sexist discrimination. I noticed that, too. My error, Your Honor, you're certainly correct. It wasn't your error. You didn't pick the names. But they are able to discriminate on the basis of sex, which, of course, is a category. That doesn't make discrimination permissible. It just says maybe there's a claim that some men or — young men or young women may have. But there is an anti-discrimination proviso in the Washington law that does govern these ASB clubs. So how far does your argument go that the — that the ASB is required to essentially grant privileges to any club that discriminates based on viewpoint or based on — that that's the basis on — that is, on which the club itself selects its membership? That does it based on religion so that there could be a Muslim club that would require one to become Muslim or to profess belief in Muslim religion? Is that where your argument goes? Certainly. That there can be — and certainly there are obvious cases of improper discrimination when it's invidious, when it's arbitrary, when it's not tied to the ideology of the group, such as what was specified in Roberts v. J.C.'s, which excluded women, although it had no relationship to the group itself. And Dale makes mention of that in the case, saying, well, the problem in Roberts v. J.C.'s is that it was not tied to the ideas of the group. Yet, in clear contrast, the Boy Scouts, in trying to exclude a member, adult member of the Boy Scouts, that was tied. Well, there was — yes, but there was also — that is requiring them to hire people in positions of leadership who are going to be spokespersons for the group. And I know we have a — you know, the officer clause in this third application that we're looking at. But I take it your answer then is yes, that the school is required to allow students at a high school to organize themselves around a particular point of view or religion and exclude anybody who does not swear allegiance to that point of view or religion. No question. And I think the school district recognizes that because in their charter application they have membership criteria. And essentially any student group is selective of its membership according to their ideas, according to their viewpoints. That's the same with the IRF Corps of YMCA. They limit their membership to those who are dedicated to environmental issues. Gay-Straight Alliance, they limit their membership to those who foster the goals of the club, and that being to deal with homophobia, to fight heterosexism. They deal with those issues. They are not — And I suppose if they decided to limit membership only to people who profess to be gay or lesbian, that would be okay under your theory? I think where the dividing line would be with the ideology. Not on a classification or a category as much as, well, do you believe in what we're doing here? Do you believe in our goals? And so, therefore, your membership does not compromise our message. Your membership does not compromise what we're trying to accomplish with our group. That is the appropriate dividing line I would submit, Your Honor. I have a question. I thought that every other club at the school was open to any student. They are, not to my knowledge, when they have membership criteria. I guess conceivably, just like truth, is open to everyone. But when it comes down to it, you have to believe with and agree to the goals of the group, the ideology of the group. That would be the case when you look at the membership criteria of the two clubs I just mentioned, the Gay-Straight Alliance. You look at the IRF Corps. Their membership deals specifically with those who grieve their position. And, of course, this was something that was specified in the Boy Scouts versus Dales, that a private club has a right to exclude those whose views would be at odds with those of the existing members. Because otherwise, what's happening is it sends out an incongruent message. It sends out an inconsistent message when you have members who do not agree with your philosophy. And that applies across the board. Just as IRF Corps and just as Gay-Straight Alliance are given that freedom, so should truth. They should be given the same freedom to form their membership and form their name according to their philosophy. Go ahead. I didn't ask them my questions. You go ahead. I was just going to ask a question. Yes, Your Honor. There are several reiterations of this application, and the second one and the third one are the ones that seem to be talked about. What do we do? You answered in question that Judge Wardlaw asserted it's only the third one that's before us today.  That was the final application, and that's the one that's before the Court. And what's the position of the second one? It's just dormant. It is dormant. Yes, Your Honor. The difference between the second and the third had to do with the membership of the organization, where the second one you had to profess certain beliefs to be a voting member and a leader, but anyone could come whether they believed in those or not as long as they kept a certain moral conduct. On this one, you have to have the profession before you can even become a member and attend? That's not quite right, Your Honor. What was set out in the third, and this was a response given by the assistant principal, saying we needed something, and they pointed out some problems with one, Article I, which dealt with the name truth, and then also Article III dealing with membership. And so if Article I, the founders set forth the scriptural basis for the name truth and why they want to have that name, and then Article III specified what the membership would be, and that is basically three categories that can attend the group. One is voting members, and these are individuals because they form the policy of the group. You're on number three now, right? Yes, Your Honor. This is the third application. Is that expressed in the charter, this distinction between attendees and general membership and voting membership? No, Your Honor, because what the charter deals with is the membership. Where the clarification is found, if you look at the excerpts on the record, I believe it's page 343 of the declaration of the founder, Julianne Stewart, and she sets out what their intentions were as far as attendees. What the charter and application deals with is the membership, because that's what Article III deals with, is particularly membership. And what it breaks down as is that you have voting members that must sign a profession of faith, that they agree with the Christian beliefs. The non-voting general membership is a code of conduct requirement, that basically it's not according to your beliefs, it's according to your conduct, that because you're representing yourself as a member of truth, truth just like other, other student clubs expect you to conduct yourself in a certain manner. Well, if I don't believe the Bible to be my soul life, but I'm willing to live a conduct of the Bible, then I could be a non-voting member. Most certainly. Are those the only two categories? Those are the only two categories of membership. As Judge Wardlaw mentioned, there's a third as far as who can attend the meeting, and that's open to everyone. Anyone can attend the meeting, because the whole idea of the group is to reach other people. So a Muslim could belong as a non-voting member, as long as their conduct was consistent with the organization's conduct. Most definitely, Your Honor. Thank you. And so because of the application of the nondiscrimination policy, it's certainly violative of the Equal Access Act, but I would also submit it's violative of the First Amendment as well. In two respects, I think one analysis that's helpful here, I would submit, is one that was offered recently by the Seventh Circuit in the Christian Legal Society versus Walker. And what it noted there is that the preclusion of an expressive group like we have here to the forum, that in and of itself implicates free speech, because you have an open forum for expressive groups, and yet truth is being denied that. In fact, what you've got here is a two-tier system that's very similar to what this Court struck down in Prince, where you've got ASV status, and then you've got what they refer to as a 2153 status. And there's essentially 31, I believe, groups out there, 30 of which are non-religious, and all 30 fall into ASV. You have one group that's religious, and that's relegated to the 2153, the second-class, second-tier status, and denied. What makes this case different from Prince is the exclusive membership and leadership criteria. And as I understand what you're arguing to be, that once you've demonstrated that you're a religious group and that you should have equal access, that the club can discriminate in any way and that there's no limit to that, whether it affects the other students because it's amounting to a religious test or whether it affects the other students in a Tinker, Harper, Pellway school district manner. It doesn't matter, because once you say we're a religious club, then you're just free to exclude anybody and have all these stringent requirements. Oh, no, Your Honor. We're not saying that at all. Obviously, Tinker would apply. Any type of invidious discrimination would apply. All the truth is seeking is the same rights as anybody else. If the IRF Corps has the ability to come up with their own name and their membership according to their philosophy, that's all truth is seeking here. Does the IRF Corps discriminate on an enumerated ground within the Washington statute? I'm sorry. I don't know what you mean by that, Your Honor. What I'm saying is, does IRF Corps, for example, discriminate against the other students on the basis of race, sex, creed, you know, other religious belief system? No, they do it just the way that truth would want to do, and that's according to its ideas. Now, with truth, it happens to be its religion, but that doesn't mean it gets less treatment. In fact, according to the equal access, it should be assured of that treatment. I think probably a good analysis for the Court would be something similar to what was adopted by Rumsfeld v. Fair, the U.S. Supreme Court of March this year. Your Honor, where that's a Solomon Amendment, which, of course, is strikingly similar to the Equal Access Act. Instead of dealing with religious and political groups, it dealt with military recruiters. And what the Court said there is you don't look at the content of the policy, you look at the result. What is the result? And the result that they found that was inappropriate in Rumsfeld was that military recruiters were being excluded, that they were not allowed the same equal access. Here, religious group, one religious group, and that's it. You've got 31, you've got one of them, and they are given the back-of-the-bus treatment. I think it's clear under the Equal Access Act that the group has the right to exist on the club, but is it as a club at the school, but is it so equally clear that the group has the right to exist with very restrictive exclusionary policies against other students at the school that it comes up with? You know, once you say it exists, can it do anything? I would not say that, but I think at a bare minimum what the Equal Access would contemplate, because it deals specifically with religious and political groups, is that they would be able to maintain the integrity of their group, that they would be able to have a membership according to their beliefs. That's a good generality, but isn't there, in terms of what it is, specifically and factually, that's necessary to remain true to the essence of the mission of the group, the case of the Sue case from the Second Circuit comes to mind, where they said, okay, fine, you can require that your leaders have these certain belief systems or act in a certain way, but you can't require that everybody that belongs to the group must act that way, drawing the line between – and it didn't say all the leaders. It said three specific leaders. Sure. Whose job it was, was to convey the message of the group to the public. I would say that, Your Honor, to the – of course, Sue did not deal specifically with membership, but I agree that that seemed to be the analysis there. I would say to the extent that it would suggest such a limited reading of the Equal Access Act, that it only deals with verbal discussion during the course of the meeting, that is simply too limited, and that is something that the Equal Access Act cannot countenance. And I think this Court recognized that in the Prince case when it specifically mentioned that the act is to be read broadly. And I think if it's read that – and, of course, it's in the context of trying to rid itself of what was perceived widespread discrimination against religious groups. And you would think this is what they would have in mind. You've got 31 groups. One gives the 2153 status. Well, the problem that I'm having is that we're a line-drawing body. Certainly, Your Honor. You seem to be arguing for an unlimited ability for a club to do anything just because it asserts that it has the right to be a club under the Equal Access Act. This is one I would suggest, and it's not very clear. I don't think my response to Judge Fischer. What I mean is this. The dividing line ought to be the ideology, what the group wants to be, what the boy scout wants to be, according to their ideas. Let me give you a hypothetical. Yes, Your Honor. Let's say Opus Dei, student, youth student Opus Dei wants to form a club at Kent High School, Kent Ridge High School. And among the things they want to require is that in the sacrifice and recognition of Jesus as our Savior, that he suffered and died on the cross, and that, therefore, we should submit ourselves to the same kind of sacrifice, and it required all members to engage in self-flagellation. Would that be acceptable under your argument? Not at all. I would think Tinker would have to come in and play there. That would be a material substantial disruption. Great. Self-flagellation, not to others. I can't speak for administration, but I would assume even if it's self-flagellation, they would have to step in and say, well, we can't allow that on our school campus. So why can't they say we can't allow a club to come on and break state law in terms of its exclusionary membership policies? Because they're not breaking state law. Because if you look at the correlation, that's a public accommodations law. There is a specific exemption for religious organizations just like this. And that's because it contemplates that for a religious organization, your membership has to be based on your religious beliefs. It has to be. Or otherwise, you've compromised who you are. And that's no different from other clubs. I know this seems to go on. Go ahead. I know this seems, you know. I agree with that. Are you responding now in relationship to association freedoms or the Equal Access Act? It deals with associational freedoms, Your Honor. But I would submit that equal access. Freedoms have much more to do than just religion. No question. They do. It's very broad. And if I understand correctly, there is limitations on that, that any anti-discrimination will only give way when there's a material effect on the group's ability to exercise their expressive purpose. That's right. You have to share that it impacts the expressive purpose of the group. Okay. So if you have, for example, the Gay Straight Club, which has club membership on the campus, in what way are they different from your organization, which has not received membership, as far as whether you're materially able to affect the group's expressive purpose? Absolutely none. There's a particular ideology. There's a particular series of ideas for the Gay Straight Alliance. And the same thing goes for truth. So there's really no appreciable difference except for their viewpoint. If I were to want to be a member of the Gay Straight Alliance, would I have to indicate a belief in a certain political view or a certain view as to how gays and straights should be? No question. Or you would not be permitted in as well within the right of the Gay Straight Alliance to keep you out if you cannot agree to their tenets. Do they have to accept a certain point of view before they can become members? Yes, Your Honor. So they could say that you cannot, whether you're gay, straight, or bi, whatever, you cannot be a member of our club and vote if you don't support gay marriage. Yes, Your Honor. They could do that, and that's authorized in their charter. That's in the record. They didn't specify gay marriage, but certainly that would be the idea as far as what they promote as far as their ideology. We've been tossing hypotheticals and names around. I'm just trying to get a clarification on what the record shows. Does the record you're saying what all of these clubs can and actually do, the Earth Corps group, they actually exclude members who don't in some fashion evidence commitment to their point of view? Yes, Your Honor. Ideology. They do. It's set forth in the record as the charters and applications that the school submits to them. And it says membership criteria, and in response to that, that's what they put down. I'm out of time, and I thank you, Your Honor. Good morning. I'm Michael Tierney, representing the Kent School District. I'm accompanied here today by Mr. Charles Lamb, who is the judge. We're going to enjoy your argument if you keep your voice up. I'm sorry. The hearing is not really good. It may seem like it's high-tech, but it's a far-off. I struggle with my usual tendency, which is to really raise my voice and get right into the microphone. So I'll go ahead and raise it then. I'm accompanied by Mr. Charles Lamb, who is the general counsel for the Kent School District. I think what I'd like to do is just kind of jump right into some of the threads of discussion that were present in the opening argument. And I think it's important to point out some critical facts that I believe both affect that discussion and also fold in very closely with one of the key points in the Prince case. One of the points that the Prince case emphasized in distinguishing this situation in Prince from an establishment situation was the role of the ASB counsel in approving student clubs. The Prince court pointed out that it is the ASB counsel, not the school district, that approves constitutions and charters. And it is the ASB counsel, not the school district, that approves club budgets. In fact, it pains to repeat that point. It said, again, it is the ASB counsel, not the school district, that approves club budgets. And we have a situation before the court where the ASB counsel, over a period of time, considered this club and its various permutations at least six times and voted on it three times and turned it down three times. Right, but the ASB counsel is constrained by the limits of the Equal Access Act. I would agree that it is constrained by the limits of the Equal Access Act, but I believe that the fact that the ASB counsel participated in this, since the court pointed that out as a distinction in the Establishment Clause argument, that is now present in this case, where if we don't have the school district being insulated, as it was in the Prince case, by the interposition of the ASB counsel. Are you arguing with now liability now? No, I'm not arguing with now liability. What I'm leading to is to point out that the ASB counsel – this takes us into a discussion of what is the ASB. What is it? What is being asked for here? The Truth Club is asking for ASB status, and what does that mean? Well, the ASB is a body created by state statutes. It's got some degree of independence. ASB student funds cannot be spent without approval of an ASB representative, but at the same time it has control by the school district, and that the school district audits and has to ultimately approve its expenditures. And the ASB is appointed by the state as the representative of the student body, and most importantly the ASB counsel is to determine what are the activities of the associated student body. Now, that gives the associated student body its own rights of choice, its own rights of association, its own rights of speech. But you aren't seriously suggesting that they could then selectively discriminate against clubs based on what a majority of students on the ASB counsel decide is congenial to their points of view. I'm not specifically suggesting that. You're not even generally, I hope. No, what I'm saying is that because of the nature of the ASB counsel as an arm of the state, as a representative of the students, that in a situation where it does not want to engage in the speech and to apply relief where the school district has to, in essence, force the ASB to spend ASB funds on a project it does not want to, that we have moved into the area of establishment where the, and rather than being neutral, the school district now has to be an advocate and now has to force the ASB counsel to do something that it basically doesn't want to do. Is the school district now in the position of promoting gender discrimination through the honor clubs? Well, I think there's a number of points to be made on that, Your Honor. Well, there's one really significant feral point, which is that by federal law and statute in areas of education, those kinds of clubs based on gender, gender honors, voluntary youth services, may be authorized to discriminate on the basis of sex or gender. So nobody cited that statute in the brief, but it actually exempts those kinds of youth service organizations. And that was my first point. As a premise, I don't believe there is any discrimination taking place here. So let's shift over to the Gay-Straight Alliance, because I'd really like you to address the ideology point that counsel has made, which is that the assertion is that ASB counsel has approved clubs where the membership criteria are ideology-driven and controlled and that the student club members may exclude their classmates based on ideology. If you don't, his position is the Gay-Straight Alliance could exclude students who will not profess and sign an agreement to be in favor of gay marriage. So is that the kind of regime that exists? And if it does, then how is it that the students can selectively pick which ideologies they are willing to associate with? I believe that is correct, that there are ideologically-based groups. Now, whether anybody has actually been prohibited from joining them, I don't know. But there is no doubt, and I will agree with counsel on that point, that there are either charters or constitutions that set forth some sort of mission statement or criteria that says what the purposes are and that we want people who want to believe in cleaning up the earth or something like that. That is true. And all of a sudden I'm drawing a blank because I was ready for this question and I can't remember the name of the case where the court went through a list of allowable discrimination, such as grade point average, such as the kinds of beliefs we're talking about, such as political parties, and distinguished that from grounds of discrimination that are not allowed. Counsel, as I understand it, is trying to move away from religion in some respect by saying this is an ideology. In this case it happens to be a religious ideology, but why, given the purposes of the Equal Access Act and the jurisprudence of the Supreme Court in allowing religious clubs in various ways to be on public facilities, how is it that, you know, what is your argument as to why they can't have a religious ideological membership criterion? I think to state it succinctly, religious discrimination is prohibited discrimination. So the Muslim students could not form a Muslim-only club? I do not believe that under the principles we are arguing the Muslim students could create one. I do not believe a group of skinheads could create an Aryan club and call it God Only Loves White People. Could there be a Hebrew club? I do not believe under these principles that there could be one, even if their purpose was to... Is your position that there's no clubs espousing any type of religion that are allowable? I don't know if it's true that there are no clubs espousing any type of religion. I think I may have overspoken. I'm assuming that the question meant... The point I'm trying to make, why is it that religion is singled out as being something that should not have a club on campus when you can have those who believe in a gay way of life? You can have people that are only women can join or only men can join, but you can't have a club that deals with any type of religious view. Why would that be? And I think this is a very important point. I did overspeak. The school district does not forbid religious clubs. There are Bible clubs in the school district. What I was assuming in that question was that these clubs are limited to Jewish, limited to Islamic, limited to Hindu. That is the distinction that... And this is why I was... I was implicit in my question because that seemed to be the assertion of counsel was that you could, under these various headings, have exclusive restrictive policies equivalent to what Truth in Bible is professing. So that's implicit in the question. Yes, and I do not believe that any other religious group... Well, the two clubs that do exist that are in the record allow all students to join, regardless of their faith, regardless of their beliefs. Here, in this case, if I understood correctly what your adversary said, anyone who will live a certain conduct, no belief conduct, can be a member, but voting members have to have a certain point of view of religion. So you can join and I can join that club, regardless of our belief in the Bible, so long as we'll live a certain way. Isn't that pretty close to what the court had in the Second Circuit in Sioux, where your leadership, like Jones, where your leadership has to be of a certain view, otherwise your expressing purpose will be diluted? And that is not under a religion clause. That's under First Amendment association. The restriction in Sioux was much less restrictive. It was only to the qualifications of officers. I understand there are certain officers, but the principle is there that you can distinguish between leadership and members. Well, but that isn't what we have in this case, and the Sioux court specifically pointed out that a general restriction on members was plainly unsupportable, and that's exactly what we have in this case. Why is that so? In this case, if you are willing to have a certain conduct, you can become a non-voting member. I can explain that. You can become a voting member. I can explain that, and it will take a couple minutes. What's happened is the focus has been shifted to just one aspect of what the club put forth, but there are further sources in its charter and its applications about what the purpose of the club is to associate in fellowship with fellow believing Christians, et cetera. But the primary point on that is, as the district court described in its opinion, that the definition of conduct here is necessarily a religious definition that is very vague, and the court went to some examples. Yes, and it's very difficult for me to see. I'm going to join a club. They say you have to act this way. I don't have to believe in anything. You have to act the way. That's not belief. That's conduct. Well, let me point it out. The club says you have to act in accord with Christian principles as generally defined in the Bible. Okay. Now, I'm in the club, and I say, well, that means you have to receive Christian sacraments every Saturday or every Sunday. Now, if you don't want to receive Christian sacraments and that conflicts with your faith, you can't be a member of the club. If the club says if you're going to obey Christian principles and you're a woman, you have to be submissive to men. Okay. Let's say that you have a club that's made up of homosexuals, and I agree that homosexuals should have equal rights with everybody, so I want to associate myself with them. I'm heterosexual. So I join into that club. Can they keep me out because I'm heterosexual on campus? Frankly, at this point, I'm not positive since the legislature amended the anti-discrimination law to include gender orientation. Your very club, we have it in the record, doesn't have that membership requirement. Yeah. Well, I'm responding to a hypothetical. I don't know if that would be legal or not now. Let's assume that I can join. Then I get in and they say, okay, you can join because you believe that we should have equal treatment, but you can't be a leader in our organization because we want to have only homosexuals who are going to be leaders because it will do away with our message, the strength of our message. Does that make it a violation? Well, it might under current law now. It might under the new anti-discrimination law in Washington. But prior to that, I would say probably not, and the difference is that historically in this country and based on the First Amendment and the Establishment Clause and the Free Exercise Clause that religious discrimination has been prohibited. Discriminating. We're in association clause now. We're not over in religion. We're in association clause. So why is this different from Jones and Boy Scouts, what they're trying to do here? Why is it different from Jones and Boy Scouts? Because this is an arm of the state operating through the ASB and the school district in a public school with mandatory attendance where students of all faiths attend and where some of the students are being told you cannot be a member of this club because of your faith, and that's a fundamental difference from a private organization. So you're telling me that Boy Scouts do not apply because we're on a campus? I'm sorry? You're telling us that Jones and Boy Scouts do not apply because we're on a high school campus? Essentially. Association case. No. No. They do not apply because the club is seeking ASB status, which is a separate status. The school is willing to let them have their discriminatory policies, but not as an ASB club, but be on campus and be, pardon me? Separate but equal. Essentially, yes. They don't get any of the benefits of ASB. They can exist, but they don't get any. I thought that was taken care of in Prince. Prince specifically pointed out that the club in question in Prince was open to all members. It's equal, equal, equal, equal. Well, it was equally open to all students. That second level that came up with after Garnett is not acceptable. I'm not sure I follow that. That you can have existence on the campus as an organization but can't get any of the ASB benefits. When you ask for the ASB benefits, you are assuming some of the indicia of the state, some of the indicia of authority, some of the indicia of establishment, and that moves you into a different category. You're to establishment now, and that wasn't decided below. Neither was free exercise. We're in an association rights issue. Well, specifically, the only thing that was decided below was that there was no claim under either of those because the policymaker requirements under Section 1983 had not been satisfied. So we have association, Equal Access Act that we're dealing with. Well, I think you could argue that all we're dealing with is the threshold question of whether the policymaker requirements apply. Just to go back to basics, the school's objection to this third charter is twofold. It's, one, the statement of belief that's required for voting members, and, two, the code of conduct that's required for general members. And I think also the name. I believe that allowing broadcast in a public school of a group representing the majority religion. Let's put the name aside for a second. Those two restrictions on membership, if they were not part of the charter, would you agree that you would have to let the club, Truth, and just put aside the whole issue having to do with you choosing their name, that would you agree that under the Equal Access Act and under Prince, you would have to let them be a member, be an ASB club under the Equal Access Act? If they allowed all students as members. The district has allowed Bible clubs. That's my question. Setting aside these exclusive membership and leadership provisions, you would have to let them be an ASB club? I think so. I think that's what the other clubs, that's the requirements that they satisfy. Okay. So what's your best case why the school can tell this club that they cannot have these restrictive policies? Because the club assumes a different mantle when it. No, no, your best legal decision, like line of authority. The Sue case. Okay. Well, let's try Supreme Court authority for the moment. What's your best line of authority? I mean, is it the Dale line of authority? Is it the Healy line of authority? Is it that these exclusive membership policies are going to so impinge on the other student's rights or psyche or whatever that you're allowed to condition the membership on not having these policies? And what's your best line of Supreme Court authority here? I would have to say it's the Establishment Clause line of cases, because those show when the presence of the state involvement becomes such that it trumps the free association or free speech rights. So there's the imprimatur you're saying of an ASB club, that it will be understood by the students in the school that it is a school-sponsored discriminatory club, or are you talking about entanglement? What aspect of establishment are you talking about? Well, specifically, the student council has already testified that that was its understanding, and by its vote. Pardon me? Which part? That the imprimatur would be placed on it, and then to require the school to basically overrule the student council would then bring in the entanglement part. Okay.  Yeah, my time's expired. Any other questions? All right. Thank you, counsel.
judges: Wallace, Wardlaw, Fisher